**R. SHANE JOHNSON (14217)**
shane@utahdefense.com
75 EAST 400 SOUTH, SUITE 201
SALT LAKE CITY, UTAH 84111-5124
(801) 364-2222 PHONE
*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| PATRICIA MCNALLEY, an individual, <br><br> *Plaintiff*, <br><br> -*v*- <br><br> JEFFREY ALLAN SMITH, individually and in his official capacity as a Lehi City employee; BLAKE D. FENN, individually and in his official capacity as an Orem City employee; TANNER GROW, individually and in his official capacity as a Orem City employee; ZACHARY ROBINSON, individually and in his official capacity as a Spanish Fork City employee; UTAH COUNTY, LEHI CITY, OREM CITY, SPANISH FORK CITY, and the UTAH COUNTY MAJOR CRIMES TASK FORCE, governmental entities; and JOHN DOES 1-20, whose identities are currently unknown, <br><br> *Defendants*. | **CIVIL RIGHTS COMPLAINT** <br><br><br> Civil № _____ |

Plaintiff, by and through her undersigned counsel of record, hereby complains against

Defendants, and asserts the following allegations in their totality and in the alternative:

### PRELIMINARY STATEMENT

The following allegations are based upon the undersigned's understanding of information

presently available. This is a civil rights action in which Plaintiff Patricia McNally seeks relief

for Defendants' violations of her rights as guaranteed by the United States Constitution,

specifically, the Fourth and Fourteenth Amendments, which are further secured by the Civil Rights Act of 1871, codified as 42 U.S.C. § 1983, § 1985 and § 1988. This action also seeks relief under the Constitution of the State of Utah, Article I, Section 14, to the extent applicable under the facts.

On the evening of March 21, 2017, McNally was lying in bed, paying bills over the phone, and watching television when members of the Utah County Major Crimes Task Force burst through the front door of her home, arrested McNally at gunpoint, detained her for the next hour, and searched her home. McNally had nothing to do with the target of the Task Force's search warrant and lived in an altogether different residence.

Defendant Jeffrey Allan Smith omitted from his application for a search warrant numerous clear indications that McNally's home was a separate residence rather than the simple "outbuilding" Smith described. Upon approach, and certainly upon entry, all Defendants who participated in the forced entry, arrest, and search of McNally's home ignored a host of telltale signs it was a separate residence. Rather than retreat from the search and release McNally, as the Fourth Amendment requires, the Defendants handcuffed McNally, interrogated her, threatened to jail her, searched her home, and insisted it did not matter that McNally lived in a residence separate from their suspect.

## JURY TRIAL DEMAND

McNally demands a trial by jury on each and every claim pleaded herein.

## PARTIES

1.   Plaintiff Patricia McNally ("McNally") is a citizen of the United States and a resident of Salt Lake County, State of Utah.

2

2.   Defendants Utah County, Lehi City, Orem City, Spanish Fork City and the Utah County Major Crimes Task Force are political subdivisions of the State of Utah.

3.   At all relevant times, Defendant Jeffrey Allan Smith ("Smith") was employed as a police officer for the Lehi City Police Department, and detailed to the Utah County Major Crimes Task Force. At all times alleged in this Complaint, Smith was acting in the course and scope of his employment, and under the color of law. McNally is suing Smith in his individual and official capacities.

4.   At all relevant times, Defendant Blake D. Fenn ("Fenn") was employed as a police officer for the Orem City Police Department, and detailed to the Utah County Major Crimes Task Force. At all times alleged in this Complaint, Fenn was acting in the course and scope of his employment, and under the color of law. McNally is suing Fenn in his individual and official capacities.

5.   At all relevant times, Defendant Tanner Grow ("Grow") was employed as a police officer for the Orem City Police Department, and detailed to the Utah County Major Crimes Task Force. At all times alleged in this Complaint, Grow was acting in the course and scope of his employment, and under the color of law. McNally is suing Grow in his individual and official capacities.

6.   At all relevant times, Defendant Zachary Robinson ("Robinson") was employed as a police officer for the Spanish Fork City Police Department, and detailed to the Utah County Major Crimes Task Force. At all times alleged in this Complaint, Robinson was acting in the course and scope of his employment, and under the color of law. McNally is suing Robinson in his individual and official capacities.

3

7.   At all relevant times, Defendants John Does 1-20 were employed by Utah County, Lehi City, Orem City, Spanish Fork City, the Utah County Major Crimes Task Force, or another political subdivision of the State of Utah. At all times relevant to this Complaint, John Does 1-20 were acting within the course and scope of their employment with these government agencies, and under the color of law. McNally is suing these Defendants in their individual and official capacities.

## JURISDICTION AND VENUE

8.    This action arises under the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. §§ 1983 and 1988. Accordingly, the Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

9.   The claims made in this Complaint occurred and arose in Salt Lake County, State of Utah. Accordingly, venue is proper under 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

**Affidavit for Search Warrant**

10.   Defendant Jeffrey Allan Smith, a Lehi City Police detective who was then detailed to the Utah County Major Crimes Task Force ("Task Force"), applied for and received Search Warrant No. 1560311 on March 21, 2017.

11.   Smith's Affidavit for Search Warrant (the "Affidavit") stated that police used a confidential informant to purchase drugs on two occasions in the prior 60 days from an "unknown Hispanic male" believed to reside in a residence located at 137 N. 900 West, Salt Lake City.

12.   The Affidavit did not identify the suspect.

4

13. The Affidavit identified no other person residing at 137 N. 900 West, Salt Lake City, as being involved in the sole suspect's drug activity.

14. The Affidavit described no drug transaction occurring at 137 N. 900 West, Salt Lake City.

15. The Affidavit stated the suspect drove a 2006 silver Toyota Corolla bearing Utah license plate W36 1NU.

16. The Affidavit did not identify the registered owner of the vehicle the suspect was observed driving, nor did it indicate that any such inquiry was conducted.

17. The Affidavit described no other vehicles associated with the property at 137 N. 900 West, Salt Lake City.

18. The Affidavit stated that the suspect travelled away from the residence to consummate drug transactions.

19. The Affidavit nonetheless requested, and the magistrate granted, permission to search all persons found at, or arriving to, the residence, based on Smith's "training and experience" that "[f]ailure to search the persons at, or arriving to, this residence for the presence of controlled substances and related paraphernalia will result in the loss of valuable evidence."

20. As to McNally's home for the past seven years, the Affidavit stated simply: "Also directly behind the home is a white brick outbuilding."

21. Merriam-Webster defines an outbuilding as "a building (such as a stable or a woodshed) separate from but accessory to a main house."

22. McNally's home is a garage converted more than a decade ago into a studio apartment at 137 N. 900 West, #B, Salt Lake City, Utah.

23. The nature of McNally's home as a separate residence was apparent to Defendants at least upon entry, with Smith writing in his report of the search warrant service: "Patricia

McNally was living in an outbuilding made into an *apartment* on the west side of the home."
(Emphasis added.)

24. The Affidavit omitted all of the following:

   a. The suspect's street-facing residence had two mailboxes next to the front door where officers had observed the suspect coming and going.

   b. The mailboxes were visible from the street, and were visible from the publicly-available Google Maps imagery of the street-facing residence.

   c. One of the mailboxes on the street-facing residence was McNally's.

   d. McNally's home had two windows on each of four sides.

   e. McNally frequently parked her own vehicle immediately adjacent to the entry of her home, and the vehicle was shown parked there in Google Maps imagery available at the time.

   f. McNally's home had a satellite dish on the roof, which was visible in Google Maps imagery available at the time.

   g. McNally's home had a separate electric meter, with a separate power line wrapping around the home visible in Google Maps imagery available at the time.

   h. McNally's home and the street-facing residence each have three separate municipal waste cans for trash, recycling, and compost, respectively, with cans located next to McNally's home visible in Google Maps imagery available at the time.

   i. McNally's home was physically separate from the suspect's residence with no interior link between them.

   j. McNally's home had a solid green entry door with a peephole on the north side, a deadbolt lock, a welcome mat, and a porch light.

6

  k. Defendants never observed the target of their investigation associated with McNally or her home.

  l. McNally's home was located on property owned by Miracle Rock International Ministries, which also owns the real property located on parcels on either side of 137 N. 900 West.

  m. The United States Post Office lists multiple mailing addresses for the target address, including McNally's address as 137 N. 900 West, *#B*.

**No-Knock Forcible Entry, Arrest, and Search**

25. The exterior features of McNally's home alleged in Paragraph 24 of this Complaint were apparent to, or should have been apparent to, those Defendants who approached McNally's home prior to forcing entry.

26. After bursting through McNally's front door, all of the trappings of a residence equipped for independent living were clearly apparent.

27. The interior of McNally's studio apartment included at least the following: a wardrobe, air conditioner, garment rack, television stand and television, full-size bed with Ms. McNally laying in it, nightstand, lamp, books, bookshelf, kitchen table, chair, laptop computers, refrigerator, stove, sinks, bathroom, dresser, vacuum, and water heater.

28. McNally was lying in bed, in her night clothes, dentures removed, paying bills by telephone, and watching television when Defendants nonetheless burst into what was clearly a separate residence not described in the warrant.

29. Defendants pointed military-style weapons at McNally's head.

30. Defendants ordered McNally out of bed at gunpoint.

31. Defendants forcibly handcuffed McNally.

32. Defendants accused McNally of possessing illegal drugs.

33. Defendants ordered McNally to tell them where the drugs were.

7

34. Defendants threatened to take McNally to jail if she did not tell them where to find the drugs.

35. Defendants ordered McNally out of her home.

36. Defendants searched McNally's home, rifling through her personal belongings for approximately 20 minutes, but turned up no contraband.

37. Handcuffed, McNally's hair was stuck in her mouth, and she had difficulty answering Defendants' questions without her dentures.

38. Defendants escorted McNally back into her home, and took off her handcuffs, explaining that she did not appear to be a threat.

39. Defendants sat McNally in a chair in her home, remained in her home, and continued to detain her for approximately another 40 minutes.

40. No Defendant apologized to McNally or acknowledged so much as that a mistake had been made.

41. Defendants insisted to McNally that the warrant authorized a search of the entire property, regardless of whether McNally lived in a residence separate and apart from Defendants' suspect.

42. An officer employed by the Salt Lake City Police Department, whom did not apparently participate in the warrant service, offered to help McNally secure the entrance to her residence; no Defendant offered McNally any such help.

43. Upon information and belief, Defendants were not trained to retreat from the search of a residence and the detention of its occupants upon learning of a risk that it was a separate residence erroneously included within the scope of a search warrant.

**McNally's Injuries**

44. When Defendants forced entry into McNally's home and pointed military-style weapons at her head, McNally believed she was going to die.

45. While Defendants searched McNally's home, they forced her to stand outside in her pajamas, cold, toothless, and handcuffed, causing her to feel humiliated, violated, powerless, and terrified.

46. When Defendants threatened to jail McNally, she instantly felt devastated and mortified by the prospect of being jailed alongside, and disappointing, the prisoners whom she has ministered to for the past several years through her church.

47. As a result of the Defendants' conduct:

      a. McNally has been diagnosed with Posttraumatic Stress Disorder.

      b. McNally has suffered recurrent, involuntary and intrusive memories of the raid, including traumatic night terrors and flashbacks.

      c. McNally suffers fear, horror, anger, and alienation from others.

      d. McNally has lost time at work, and she has withdrawn from friends and family.

      e. McNally has become obsessively hypervigilant about her surroundings, including avoiding encounters with police, who now terrify her.

      f. McNally has exaggerated startle responses, problems with concentration, and difficulty sleeping.

      g. McNally's symptoms have impaired her socially, occupationally, and within her community.

48. Shortly after the raid, and as a result of Defendants' conduct, McNally has suffered several outbreaks of shingles which, upon information and belief, were brought on by the extreme stress and trauma caused by the raid.

49. Prior to the raid, McNally had never experienced a shingles outbreak.

50.   McNally has suffered excruciating symptoms from the shingles outbreaks, including headaches, flu-like symptoms, sensitivity to light, rashes on her body which develop into painful blisters, itching, and extreme skin and nerve pain.

### FIRST CAUSE OF ACTION
#### MATERIAL MISREPRESENTATIONS & OMISSIONS FROM AFFIDAVIT
(Under 42 U.S.C. § 1983 in violation of the Fourth & Fourteenth Amendments against Defendant Smith and unknown JOHN DOES for knowingly misrepresenting and omitting material information in the Affidavit)

51.   McNally incorporates by reference and restates all preceding allegations.

52.   McNally enjoyed the rights under the United States Constitution to be secure in her person, home, papers, and effects, against unreasonable searches and seizures, including the right that a warrant shall not issue, except upon probable cause supported by oath or affirmation, particularly describing the place to be searched, and the persons or things to be seized, and to the equal protection of the laws. Defendants violated McNally's rights to this end.

53.   Defendants lacked probable cause or any other quantum of suspicion to believe McNally was involved in criminal activity.

54.   The Affidavit did not name a single suspect, let alone McNally, and it did not note any suspicion of criminal conduct associated with McNally or *her* home.

55.   The warrant was fatally defective because Smith had a duty to discover and disclose to the magistrate all information readily available suggesting separate residences were included within the scope of the warrant targeting a single person and a single residence.

56.   Smith had a duty to discover and disclose to the magistrate at least the following readily available information about the property described in the Affidavit: it was owned by an entity other than the suspect; it had separate mailboxes; it had multiple addresses on file with the post office; it had multiple municipal waste, recycling, and compost cans.

10

57.   Smith had a duty to discover and disclose to the magistrate at least the following readily available information about the "outbuilding" described in the Affidavit: it had a satellite dish on the roof; it had a separate electric meter and power lines; it had a door with a peephole and deadbolt lock, welcome mat, and porch light; it had a vehicle parked near the entrance; it had windows on all sides.

58.   Upon information and belief, Smith knowingly, intentionally, or with reckless disregard for the truth, omitted material information bearing on the separate residences contained within the scope of the warrant, and falsely stated that McNally's home was merely an "outbuilding".

59.   Accordingly, Smith, and any other official involved in misleading the magistrate into issuing the overbroad warrant, is liable to McNally for all injuries and damages sustained as a result of the execution of the invalid, overbroad warrant, which should have excluded McNally's residence from its scope.

## SECOND CAUSE OF ACTION
### UNCONSTITUTIONAL SEARCH & SEIZURE
(Under 42 U.S.C. § 1983 in violation of the Fourth Amendment, against all Defendants who entered or searched McNally's home, seized McNally, or failed to intervene to stop the search and seizure)

60.   McNally incorporates by reference and restates all preceding allegations.

61.   The warrant was fatally and facially overbroad by authorizing the search of multiple residences without distinguishing between the residences, and where Defendants lacked probable cause to believe illegal activity was occurring in each residence, or that their suspect had dominion and control over McNally's residence.

62.   The warrant was also fatally and facially overbroad in that it authorized the search of all persons found at, or arriving to, 137 N. 900 West, when the Affidavit articulated no particularized basis to believe the suspect was in league with others on the property, let alone

with McNally. To this end, the warrant was so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable.

63.    All Defendants who entered McNally's home, searched it, or seized her, were required to discontinue the search and seizure immediately upon being put on notice of the *risk* that they might be in a separate residence erroneously included within the scope of the warrant, yet they failed to retreat, and failed to intervene to stop the unconstitutional search and seizure.

64.    All Defendants who entered McNally's home, searched it, or seized her knew or should have known of the risk that it was a separate residence upon approaching the residence, and then again upon entering it.

65.    All Defendants who entered McNally's home, searched it, or seized her, or failed to intervene, knew or should have known that probable cause did not exist to search and detain all persons found at or arriving to 137 N. 900 West.

66.    The Defendants ignored numerous obvious indications of a separate residence upon approaching McNally's home, among them: separate structures, separate power, separate satellite dish, separate municipal waste cans, a vehicle unassociated with the suspect parked next to the entrance, a worn path leading to the entrance, a residential door with deadbolt lock, peephole, porch light, and a welcome mat.

67.    The Defendants ignored incontrovertible indications of a separate residence upon entering McNally's home—a middle-age white woman lying in bed watching television as compared to the Spanish-speaking Hispanic male suspect who resided in the main house, a wardrobe, air conditioner, garment rack, television stand and television, full-size bed, nightstand, lamp, books, bookshelf, kitchen table, chair, laptop computers, refrigerator, stove, sinks, bathroom, dresser, vacuum, and water heater.

68.    These Defendants detained McNally and searched her home without probable cause, failed to retreat from the search and seizure as required by the Fourth Amendment and are therefore liable to McNally for all injuries and damages sustained as a result of their initial entry, failure to retreat from the search and seizure, and failure to intervene to terminate the unconstitutional search and seizure.

### THIRD CAUSE OF ACTION
#### UNCONSTITUTIONAL SEARCH & SEIZURE
(Under Article I, Section 14 of the Utah Constitution, Against all Defendants who entered or searched McNally's home, seized McNally, or failed to intervene to stop the search and seizure)

69.    McNally incorporates by reference and restates all preceding allegations.

70.    McNally suffered flagrant violations of her right to be free from unreasonable search and seizure under Article I, Section 14 of the Utah Constitution, existing remedies under Utah law do not redress these injuries, and equitable relief is wholly inadequate to protect McNally's rights and redress her injuries to this end.

71.    The Utah Governmental Immunity Act immunizes governmental entities and employees from any suit for injury resulting from the exercise of a governmental function, including violations of civil rights. *See* Utah Code §§ 63G-7-201(1), (4).

72.    Equitable relief is wholly inadequate to protect McNally's rights and redress her injuries, inasmuch as existing state laws provide no penalty for their violation, failed to deter Defendants' unconstitutional conduct, and explicitly prohibit redress absent a finding of willful misconduct.

73.    The Utah Constitution's search and seizure provision is at least as protective, if not more protective, of the right to be free from unreasonable searches and seizures.

74.    Here, Defendants lacked any reason to believe McNally or her home were associated with the criminal activity involving the unnamed suspect.

13

75. Defendants nonetheless forcibly entered McNally's home, detained her at gunpoint, handcuffed her, accused her of criminal conduct, threatened to jail her, and searched her home with no quantum of suspicion to believe McNally was involved in criminal activity.

76. Defendants' conduct, while acting under color of law, directly caused the deprivation of McNally's rights to be free from unreasonable search and seizure under and Utah Constitutions, and all injuries and damages resulting therefrom.

### FOURTH CAUSE OF ACTION
#### MUNICIPAL LIABILITY
(Under 42 U.S.C. § 1983, Failure to Train in Violation of Fourth Amendment
Against Utah County, Lehi City, Orem City, Spanish Fork City, and Utah County Major Crimes
Task Force)

77. McNally incorporates by reference and restates all preceding allegations.

78. Utah County, Lehi City, Orem City, Spanish Fork City, and the Utah County Major Crimes Task Force (the "Municipal Defendants") bear municipal liability for the unconstitutional conduct of their employees.

79. The individual Defendants' lack of training, or deficient training, was directly and causally linked to the unconstitutional search of McNally's home and seizure of McNally.

80. Upon information and belief, policymakers from the Municipal Defendants' agencies were deliberately indifferent to whether their officers should retreat from execution of an overbroad warrant encompassing the search of multiple residences without a finding of probable cause as to each.

81. Upon information and belief, policymakers from the Municipal Defendants' agencies knew to a moral certainty that their police officers would be required to serve residential search warrants, and that the separation of individual residences is often not readily apparent to police when applying for and initially executing search warrants.

82.   Upon information and belief, the Municipal Defendants failed to train their officers to retreat from the search of a residence and seizure of its occupants upon discovering the risk that a warrant erroneously authorized the search of multiple residences, without a finding of probable cause as to each.

83.   Accordingly, the Municipal Defendants bear municipal liability for the search and seizure violations committed by the individual Defendants it employed, inasmuch as the Municipal Defendants' failure to train its employees was directly and closely related to the Fourth Amendment violations and resulting injuries suffered by McNally.

## PRAYER FOR RELIEF

WHEREFORE, McNally prays that this Court enter judgment against Defendants as follows:

1.   A declaration that Defendants' acts and practices violated Plaintiffs' rights under the Utah and United States constitutions;

2.   A permanent injunction against Defendants restraining them from committing such unconstitutional acts going forward, as well as affirmative relief directing Defendants to take such action as is necessary to eliminate similar violations going forward;

3.   Compensatory, special, and speculative damages in an amount to be determined at trial;

4.   Punitive damages on all claims allowed by law, in an amount to be determined at trial;

5.   Reasonable attorney fees and the costs of litigation; and

6.   All other relief this Court deems just and equitable.

DATED this 12th day of September, 2017.

R. Shane Johnson
*Attorney for Plaintiff*

16